UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-23688-CV-COOKE
MAGISTRATE JUDGE REID

ALFREDO ROCA-MORENO III,

    Plaintiff,

v.

KERRION DESOUZA and VICTOR SANCHEZ,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

### **I. Introduction**

This matter is before the Court on Defendants' Motions to Dismiss Plaintiff's Complaint, filed pursuant to Fed. R. Civ. P. 12(b) and 42 U.S.C. § 1997e(a). [ECF No. 31]. This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b) and S.D. Fla. Admin. Order 2019-2. [ECF No. 2].

In the Motion to Dismiss, Defendants argue that Plaintiff's Complaint [ECF No. 1] should be dismissed because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). [ECF No. 31]. Plaintiff filed a Response in opposition to the Motions, stating that he did exhaust his administrative remedies, and that his otherwise untimely attempts at exhaustion are in fact timely because he was not aware of the incident raised in his Complaint until October 2018. [ECF No. 42].

Upon review of the Motions and the parties' pleadings, the Undersigned **RECOMMENDS** that the Motion to Dismiss [ECF No. 31] be **GRANTED**, but the case be dismissed without prejudice, as further discussed below.

## II. Discussion

A. <u>Administrative Exhaustion: 42 U.S.C. § 1997e(a)</u>

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995" (the "PLRA"). *Jones v. Bock*, 549 U.S. 199, 202 (2007). "Among other reforms, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Id.* (citing 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a)).

The exhaustion provision of the PLRA states:

> "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).

"Requiring exhaustion allows prison official an opportunity to resolve disputes concerning the exercise of their responsibilities before being hailed into court." *Jones*, 549 U.S. at 204. "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).

In Florida, the mandatory administrative procedure requires a state prisoner to: (1) file an informal grievance with the staff member who is responsible in the area of the particular problem, (2) file a formal grievance with the warden, and then (3) submit an appeal to the Secretary of the Florida Department of Corrections. *See Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004); Fla. Admin. Code §§ 33-103.005-7). "These steps must be completed in order and within certain time frames." *Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200 (11th Cir. 2018) (citing Fla. Admin. Code § 33-

103.011(4)). For example, an informal grievance must be received within twenty (20) days of when the incident or action being grieved occurred. *See* Fla. Admin. Code § 33-103.011.

Informal grievances may be returned without further processing if certain conditions are met, including the fact that the grievance is so broad, general, or vague in nature that it cannot be clearly investigated, evaluated, and responded to. *See* Fla. Admin. Code § 33-103.014. If, however, a prisoner wants administrative review after his informal grievance is returned under § 33-103.014, he must correct the defects and re-submit the grievance within the time limitations set forth in Fla. Admin. Code § 33-103.011. *See id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Dimanche*, 783 F.3d at 1210 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. *Id*. (citations omitted).

"First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id*. (citations omitted). "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citations omitted). "Second, [i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. (quotations and citations omitted).

"The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (quotations and citations omitted). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. (quotations and citations omitted).

3

B.      Plaintiff's Factual Allegations

In the Complaint, Plaintiff alleges that in June 2017, he was in the hospital for treatment for injuries after he was attacked by several inmates. [ECF No. 1]. While he was shackled to his hospital bed Defendants "began to taunt [Plaintiff] by charging up the taser (on and off) poking it between [Plaintiff's] legs and threatening to tase [sic] [Plaintiff] in [his] genitalia menacing around and laughing." [*Id.*].

"After tormenting [Plaintiff] with threats to tase [sic] [him] and poking the taser at [Plaintiff], they began torturing [Plaintiff] tasing [sic] [Plaintiff] three times in [his] legs, once in [his] chest, and once on [his] head," which "rendered [him] unconscious." [*Id*. at ¶ 3].

Upon regaining consciousness, Plaintiff alleges that he was in the intensive care unit with "tubes" going into him and "under observation for cranium bleeding that had been caused or aggravated by being tased [sic] in the head." [*Id*. at ¶ 4].

Plaintiff claims that he now permanently suffers from seizures because of the attack and must take medication for the rest of his life. [*Id*. at ¶ 6]. In addition to the seizures, Plaintiff also claims that he has suffered mental and emotional distress, including suicidal tendencies, neurotic fear of officers, memory loss, loss of concentration, inability to hold a thought for longer than a few seconds, and frequent psychotic episodes. [*Id*.]. Plaintiff states that these symptoms are commonly associated with post-traumatic stress and traumatic brain injury. [*Id*.].

Plaintiff alleges that Defendants "intentionally thwarted a proper investigation by filing false incident reports to avoid criminal investigation for aggravated assault and aggravated battery." [*Id*. at ¶ 5]. As a result, Plaintiff claims that the "Inspector General absolved the two defendants of any wrong doing by the use of force with the disposition finding that the use of force

4

was in compliance with procedure for assault from inmate to staff," though it "noted discrepancies or concerns to be addressed through the employee disciplinary process." [*Id*. at ¶ 8].

Among such discrepancies were that "Officer Sanchez failed to report the incident to the on-duty OIC resulting in late MINs, Officer Sanchez and Desouza failed to complete the required reports prior to departing their shift," and that there was no hand-held video record of the incident." [*Id*.]. Plaintiff also says that part of the report is redacted so he does not know what it says. [*Id*.].

In short, Plaintiff alleges that he was tasered by Defendants in violation of his rights under the Eighth Amendment, causing permanent physical and mental injuries. [*Id*. at 2-3]. Plaintiff alleges that the attack by Defendants was "without need or provocation" and that they also "fail[ed] to intervene to prevent the use of force" against him. [*Id*. at 3].

C.     Plaintiff's Attempted Administrative Exhaustion

As noted above, Plaintiff claims that the taser incident took place in June 14, 2017. [ECF No. 1 at ¶ 1]. However, Plaintiff states that he did not file a grievance regarding the taser incident until October 16, 2018, about sixteen months later. [ECF No. 42 at 6]. Defendants dispute this grievance was ever filed because there is no record of it in Plaintiff's grievance log, despite multiple other grievances being filed and logged around that same time period. Plaintiff also fails to produce a receipt from the filing of the grievance, which is customarily provided when a grievance is filed, nor is there any documented response to the alleged grievance.

Plaintiff's first documented grievance regarding the incident is in the form of a grievance sent directly to the Secretary of the Florida Department of Corrections, which is considered the second step in the grievance appeal process. However, this grievance was returned to Plaintiff without action because it was not properly made.

Defendants argue that because Plaintiff's grievances were returned to him as without action, Plaintiff failed to comply with the Florida Department of Corrections Inmate Grievance Process, and thus, did not properly exhaust his administrative remedies. [ECF No. 41]. Plaintiff claims that the denial of his claim was improper and attempts to justify the delay by claiming that he was unaware of the incident until October 2018, making his October 16, 2018 filing timely and proper. [ECF No. 42 at 3-6].

In support, Plaintiff claims that he did not realize the incident even took place until October 2, 2018, when he received a copy of the Inspector General's report regarding the Defendants' use of force incident, and that "[t]he grievance process don't (sic) start until the issue [] that one is raising is discovered and I just discovered that these corrections officers didn't report the use of force incident in a timely manner." [ECF No. 42 at 25].

In his Response, Plaintiff claims that in the "months following" the incident, he "was disturbed and confused" and experiencing "multiple episodes of him being tasered, electrocuted, and shocked by prison guards," causing him to "scream out at the top of his lungs and later dismiss them as random crazy thoughts." [*Id*. at 4]. Plaintiff "didn't know why he was having those episodes" until he received the report, at which point "it hit Plaintiff like a tsunami wave flooding his mind with the missing puzzle pieces that had been tormenting his mind, reminding him of everything that transpired in that morning of June 14, 2017." [*Id*.].

"With his thoughts in place, Plaintiff started his own independent investigation with the documents that he had at hand from the medical area at the institution and the I.G.'s office report." [*Id*.]. At that point, "Plaintiff began to take immediate action with the grievance process and follow administrative procedures." [*Id*. at 5].

6

As discussed above, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. *See Dimanche*, 783 F.3d at 1210. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id*. (citations omitted). "Second, … the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. (internal quotations and citations omitted).

"The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (internal quotations and citations omitted). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. (internal quotations and citations omitted).

Assuming everything Plaintiff claims is true, he survives step one because he does claim that he satisfied the administrative exhaustion process. As for step two, the Defendants ask the Court to find that Plaintiff did not properly and timely file his grievances and dismiss for lack of exhaustion.

Despite the somewhat complicated history, this case turns on a simple issue: whether Plaintiff's October 16, 2018 grievance was timely filed, despite the fact that the alleged incident took place in June 2017. Plaintiff claims that it was timely, because the grievance process starts when the prisoner discovers the issue, and he claims he did not "discover" the issue until October 2, 2018.

Plaintiff cites to no authority for the proposition that the 20-day time period starts upon discovery of the incident, rather than the date of the incident itself, and his argument is clearly contradicted by the express language of the Florida Administrative Code. *See* Fla. Admin. Code §

7

33-103.011 (an informal grievance "[m]ust be received within 20 days of when the incident or action being grieved occurred.").

The only exception for extending the time to file a grievance is to file for leave to file an out-of-time grievance pursuant to Fla. Admin. Code § 33-103.011(2). A prisoner who has not sought to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies. *See Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999); *see also Dessalines v. Marceus*, No. 17-CV-20297-MARTINEZ, 2019 U.S. Dist. LEXIS 70020, at *7-8 (S.D. Fla. Apr. 23, 2019). In filing for leave to file an out-of-time grievance, the prisoner must clearly demonstrate in the grievance that "it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." Fla. Admin. Code § 33-103.011(2). Here, Plaintiff did not file for leave to file an out-of-time grievance at all.

At best, Plaintiff filed a late grievance – which was never logged or documented by the prison at all – and then filed another grievance to the Secretary of the Florida Department of Corrections which was returned as improper. This is not the proper procedure. Despite this, Plaintiff maintains that his alleged October 16, 2018 grievance is simply timely, and thus filing for leave to file an out-of-time grievance was not even necessary. However, Plaintiff's claims are simply not believable, and even if they were, he is incorrect on the timeliness of his purported October 16, 2018 grievance.

While the Undersigned was unable to find any case discussing when a claim "occurs" for purposes of calculating the time for filing a prison grievance under the Florida Administrative Code, a related doctrine is useful in the Court's analysis. Florida follows what is called the "delayed discovery" doctrine, which "generally provides that a cause of action does not accrue

until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000) (citations omitted).

Applying this delayed discovery doctrine to Plaintiff's case, he would have been required to file a grievance within 20 days of whenever he knew or reasonably should have known of the tortious acts giving rise to his claims. In this case, Plaintiff alleges that, while the incident took place in June 2017, he did not know of the claims until October 2, 2018, and he timely filed his grievance on October 16, 2018. However, just because Plaintiff claims he discovered all of the facts of the incident on October 2, 2018, does not mean that is when his 20-day period for filing a grievance began to run. Following Florida's "delayed discovery" doctrine, Plaintiff's time started instead when he "reasonably should know of the tortious act." *Hearndon*, 767 So. 2d at 1184. Defendants point out ample evidence that Plaintiff knew or should have known about the incident far before October 2, 2018.

First and foremost, Plaintiff's pleadings themselves indicate that Plaintiff had some sort of memory of the incident, which would have merited further investigation by Plaintiff. Plaintiff admits he had what amounts to flashbacks of the incident for "months following" the incident. Despite memories of "multiple episodes of him being tasered, electrocuted, and shocked by prison guards," causing him to "scream out at the top of his lungs and later dismiss them as random crazy thoughts," Plaintiff conducted only a limited investigation of the facts, and claims he did not "know" of the incident until October 2, 2018. This is unreasonable given the circumstances, and more diligent investigation by Plaintiff would have revealed the facts underlying the incident much earlier. On this basis alone, the Court could find that Plaintiff "should have known" about the incident during the "months following" the incident when he experienced flashback memories of the incident.

Further, Defendants point out that Plaintiff's claim that he did not know about the use of force until he received the information from his aunt is contradicted by the record. Documents provided by Defendants show that Plaintiff's aunt had been in communication about an unspecified use of force incident, along with the inmate attack that precipitated Plaintiff's hospital visit, since at least as early as September 2017. [ECF No. 31-7 at 13-15]. The record also shows that Plaintiff had to have been communicating with his aunt regarding the incident, because on February 27, 2018, Plaintiff himself contacted the Inspector General's office and asked for the documents to be sent to her, so she could forward them to Plaintiff. [ECF No. 41-1].

These factors, combined with Plaintiff's fanciful claim that upon reading the documents, his memories of the incident came back "like a tsunami wave flooding his mind with the missing puzzle pieces," make Plaintiff's version of events wholly unbelievable. Accordingly, even applying the delayed discovery doctrine to Plaintiff's claims, they would still not be timely if filed in an October 16, 2018 grievance.

To summarize, Plaintiff's incident took place in June of 2017. He did not even allegedly file a grievance until October 2018. Pursuant to the Florida Administrative Code, the only way to avoid the 20-day time period to file a grievance is to file for leave to file an out-of-time grievance. Plaintiff did not do so. Instead, Plaintiff can be liberally construed to argue for some sort of delayed discovery doctrine to make his undocumented October 2018 grievance timely. However, even under this novel theory, Plaintiff's claims are unbelievable, and he should have file his grievance much earlier. Because Defendants have proved that Plaintiff never filed for leave to file an out-of-time grievance, and his undocumented grievance was untimely, Defendants have met their burden to show that Plaintiff did not timely and properly exhaust his administrative remedies, and this case must be dismissed pursuant to 42 U.S.C. § 1997e(a).

The final question is whether this action should be dismissed with or without prejudice. Dismissal with prejudice is appropriate only in certain circumstances, such as where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Bryant*, 530 F.3d at 1375 n. 11 (citing *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004)). Here, Defendants assert that this action should be dismissed with prejudice but has not shown that administrative remedies "are absolutely time barred or otherwise clearly infeasible." *Id.* However, Plaintiff is still in custody, and policy provides that he may file for leave to file an out-of-time grievance pursuant to Fla. Admin. Code § 33-103.011(2). Thus, Plaintiff *may* still have the ability to exhaust his administrative remedies with respect to his claim. Accordingly, this action is due be dismissed without prejudice.

### III.   Recommendations

Based on the above, it is **RECOMMENDED** that the Motion to Dismiss [ECF No. 31] be **GRANTED**, and that Plaintiff's Complaint [ECF No. 1] be **DISMISSED** without prejudice.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to do so will bar a *de novo* determination by the District Judge of anything in the Report and Recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn,* 474 U.S. 140, 149 (1985).

**SIGNED** this 10th day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   **Alfredo Roca-Moreno III**
      X18164
      Walton Correctional Institution
      Inmate Mail/Parcels
      691 Institution Road

11

De Funiak Springs, FL 32433
*PRO SE*

**Barbara Ann Junge, Esq.**
Florida Attorney General's Office
110 S.E. 6th St., 10th Floor
Fort Lauderdale, FL 33301
Email: Barbara.Junge@myfloridalegal.com
*Counsel for the Defendants*